**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

**V.**                                                                          **NO. 1:19-CR-152**

**SENAGAR ORR**

## ORDER

A federal grand jury indicted Senagar Orr on one count of being a felon in possession of a firearm.  Orr moved to suppress evidence and statements obtained during the June 3, 2019, traffic stop of his vehicle in which the firearm was found.  Following an evidentiary hearing on the motion, the Court concludes that because the traffic stop of Orr's vehicle was supported by reasonable suspicion, suppression must be denied.

### I
### Standard

"The party seeking suppression has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of Fourth Amendment rights." *United States v. Beaudion*, 979 F.3d 1092, 1102 (5th Cir. 2020).  But "[t]he government has the burden of proving the validity of a warrantless search by a preponderance of the evidence."  *United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015).  The Federal Rules of Evidence "do not operate with full force" at suppression hearings.  *United States v. Matlock*, 415 U.S. 164, 172–73 (1974).

### II
### Factual Background

The relevant facts were developed over a two-day evidentiary hearing.[1]  Three witnesses

---

[1] The hearing began on August 11, 2021, but was continued until further notice, Doc. #60, pending resolution of a document production issue raised during the hearing.  The hearing resumed and concluded on January 28, 2022.  Doc. #75.

testified at the hearing:  Kevin Forrester, Johnny Branch, and Orr.  Docs. #61, #76.

## A.  Forrester

Forrester, a lieutenant with the Lowndes County Narcotics Task Force, testified that sometime between February 2017 and June 3, 2019, a confidential informant ("CI") informed him that Orr was selling drugs.  In preparation for Operation Triple Beam,[2] Forrester and his partner Branch began trying to corroborate this information by taking photographs and observing Orr's address and vehicle.  During this time—approximately ten months before June 3, 2019—they learned that Orr's driver's license was suspended.

On June 3, 2019, a CI called Forrester and told him that Orr was at Bullets, a convenience store and hamburger restaurant located on Alabama Street in Lowndes County.  Forrester began heading toward Bullets and "called intel over a private radio network" to confirm that Orr's license was still suspended.  Because Michael Dulaney[3] was closer to Bullets than Forrester, Dulaney confirmed that Orr was actually at Bullets.  According to Forrester, Dulaney "heard the intel analyst state that [Orr's] license was still suspended," after which Forrester told Dulaney "to conduct a traffic stop on him."

After Dulaney initiated the stop of Orr's vehicle on South Lehmberg Road, Forrester arrived on the scene approximately thirty seconds later.  Forrester "pulled in directly behind … Dulaney, … walked up to the driver's side of the vehicle," and Orr handed him a blunt[4] and said, "I just rolled this blunt."  Forrester was not aware of any conversation between Dulaney and Orr before he arrived.  Forrester then asked Orr whether there was anything illegal or any weapons in

---

[2] Forrester testified that Operation Triple Beam was a collaboration between various federal, state, and local law enforcement agencies focusing on "drugs and violence … plaguing a community."

[3] At the time, Dulaney was a Lowndes County deputy assigned to the United States Marshal's task force.

[4] Forrester defined a blunt as "a hand rolled cigar wrapper with marijuana on the inside."

the vehicle and Orr told him that "if there's a weapon in the vehicle, it will be under the driver's seat by the console." Forrester then asked Orr to exit the vehicle and walk to the back of it. After Orr did so, Forrester found a firearm in the location Orr described. Consistent with two citations issued to Orr at the scene, Forrester arrested Orr for possession of marijuana in a motor vehicle and driving with a suspended license.

During Forrester's testimony at the hearing, the government introduced National Criminal Information Center ("NCIC") reports detailing when different information was requested and obtained. The NCIC records show the license plate number of the vehicle was run June 3, 2019, at 2:19 p.m.[5] and the vehicle was registered to Senagar and/or Alisha Orr. Doc. #78 at 3. An inquiry on Orr's social security number two minutes later lists his driver's license as suspended. *Id.* at 4. At 2:25 p.m., an inquiry was run listing the serial number of the firearm and at 2:26 p.m., after Orr provided Forrester with his driver's license, Forrester ran the license number and it also came back showing Orr's license as suspended. *Id.* at 6–7.

The government also introduced a copy of the two citations issued to Orr. Doc. #78 at PageID 222. Both list a time of "14:15" or 2:15 p.m. *Id.* Forrester testified that these citations were written after the fact and the time reflects they "started [their] investigation at that moment."[6]

### B. Branch

Branch, an officer with the Columbus Police Department, testified that prior to June 3, 2019, he received information from a separate CI that Orr was selling drugs and that he worked with Forrester to try and corroborate this information. On the day of the stop, Branch was

---

[5] Forrester testified it was Dulaney who called in the license plate number.

[6] During the hearing, several photographs depicting Bullets and the scene of the stop were also admitted into evidence. However, these photographs had little weight on the Court's ultimate decision since they were merely identified as images of the area where the stop occurred.

conducting surveillance on a different individual with his K-9 partner.  He heard Forrester ask the intel analyst to confirm that Orr's license was still suspended or revoked and Branch began to head towards Bullets.  By the time Branch arrived at the scene of the stop, Forrester had already found the gun and told Branch to search the vehicle.

## C. Orr

Orr testified that when he was pulled over, Dulaney asked him for his license and registration and Orr asked why he was being stopped.  According to Orr, Dulaney told him that he stopped him for running a red light.  The next day, while Orr was being questioned, the officers told him he was stopped based on reports that he had marijuana.  At no point did Orr know his license was suspended; he had driven through a checkpoint without issue a week or two before the stop in question.

## III
## Analysis

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV.  A traffic stop is reasonable under the Fourth Amendment if, at its inception, the stopping officer had "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Zuniga*, 860 F.3d 276, 281 (5th Cir. 2017).  In evaluating reasonable suspicion, "a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."  *Id.* (internal quotation marks omitted).  When reasonable suspicion is alleged based on information provided by an informant, the existence of reasonable suspicion depends on

> various factors, including the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether

the tip or report concerns active or recent activity, or has instead gone stale.

*United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007).

The parties do not dispute that driving with a suspended license is a crime in Mississippi which would justify a traffic stop. *See* Miss. Code Ann. § 63-11-40. Accordingly, the question is whether the officers had reasonable suspicion that Orr was driving with a suspended license. In his motion to suppress, Orr, relying primarily on law regarding anonymous tips, argues that the CI's tips could not have supported reasonable suspicion for the traffic stop. Doc. #50 at 3–8. The government's response counters that the CI was not anonymous and that even if he was, the traffic stop was supported by reasonable suspicion. Doc. #51 at 3–5. At the hearing, the government specifically argued that "the confidential informant tip was not the basis of the traffic stop" because the officers "independently confirmed [Orr's] license was suspended." In response, Orr argued there "was a dedicated effort to pull over [his] vehicle on the suspicion … of drug activity" and because Dulaney did not testify, it is impossible to know whether he identified Orr as the driver of the truck before or after initiating the stop. The government replied that the officers' "motivation should not matter as long as the officer has an objective reason for the stop." The Court agrees with the government.

Based on Forrester's testimony that the officers were aware Orr's license was suspended months before the stop and confirmed that it was still suspended the day of the stop, the officers had reasonable suspicion at the inception of the stop that Orr's license was suspended. Forrester also testified that Dulaney confirmed Orr was driving the vehicle. Accordingly, the officers' reasonable suspicion that Orr was driving with a suspended license may be established without recourse to any information supplied by the CI. *See Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (officer's knowledge that registered owner of vehicle had a suspended license was

5

sufficient reasonable suspicion to initiate traffic stop even where the officer was not positive the registered owner was driving the vehicle).[7]  The motion to suppress, therefore, must be denied.[8] *See Bernard v. Ray*, 246 F. App'x 553, 556 (10th Cir. 2007) ("[E]ven if the FBI invented the informant from whole cloth, the seatbelt violation [personally observed by officers] furnished the … police with independent reasonable suspicion.") (citing *Whren v. United States*, 517 U.S. 608, 811–14 (1996)).

**IV**
**Conclusion**

For the reasons above, Orr's motion to suppress [50] is **DENIED**.

**SO ORDERED**, this 3rd day of March, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[7] Orr attempts to distinguish *Glover* by arguing there was only one registered owner of the vehicle in that case and both Orr and his wife were the registered owners of the vehicle in question here.  However, Forrester testified that Dulaney confirmed Orr was driving the vehicle.  While the Court questions the government's decision not to call Dulaney to testify as to what he knew and when, given the low preponderance of the evidence standard that applies, Forrester's testimony is sufficient to establish reasonable suspicion that Orr was driving with a suspended license.

[8] To the extent Orr's testimony can be interpreted as an argument that his license was not in fact suspended, he presented nothing to support the argument.  Because the officers believed his license was suspended based on the information provided to them, they still had reasonable suspicion to stop the vehicle.  *See Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (under Fourth Amendment, "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake").